UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| UNITED STATES OF AMERICA, | Case No. 3:19-cr-00029-MMD-WGC |
|---|---|
| Plaintiff, | ORDER |
| v. | |
| LUIS ARMANDO ROJAS-BUENO, | |
| Defendant. | |

**I.   SUMMARY**

Defendant Luis Armando Rojas-Bueno seeks dismissal of his indictment for unlawful reentry under 8 U.S.C. § 1326(a), which is based on a single prior removal from the United States in 2010 ("Motion")[1]. (ECF No. 21.) The Court will deny the Motion because Defendant fails to establish, as he argues, that his removal proceedings were fundamentally unfair.

**II.   BACKGROUND**

Defendant was born in Mexico. (ECF No. 21-3 at 2.) He arrived in the United States without inspection through Arizona in May 2010. (government's Exh. A (audio recording), Track 6 at 01:50–2:09; ECF No. 21-6.) Months later Defendant was arrested in Colorado and ultimately pleaded to a Class 4 felony under Colorado law for possession of more than 1 gram of a schedule II controlled substance. (ECF No. 21-1.) He was sentenced to no period of incarceration; instead, he received two years of probation. (ECF No. 21-2 at 4.)

Immigration and Customs Enforcement ("ICE") issued a Notice to Appear charging Defendant as being inadmissible under INA § 212(a)(6)(A)(i), alien present without being

///

---

[1] The government has opposed (ECF No. 24) and Defendant has replied (ECF No. 27).

admitted or paroled, and § 212(a)(2)(A)(i)(II), controlled substance related offense. (ECF No. 21-3 at 4.) Defendant, as part of a larger group of potential deportees, appeared pro se before an Immigration Judge ("IJ") on December 1, 2010. (ECF No. 21-4; government's Exh. A (audio recording).) The IJ entered a final order of removal the same day, removing Defendant to Mexico. (ECF Nos. 21-5, 21-6.)

At some point, Defendant returned to the United States. The present indictment was filed on May 23, 2019, charging him with illegal reentry under to 8 U.S.C. § 1326(a). (ECF No. 1.)

### III. LEGAL STANDARD

To obtain a conviction for unlawful reentry pursuant to 8 U.S.C. § 1326(a), the government must establish that the defendant was previously, validly removed from the United States before the alleged reentry. *See United States v. Cisneros-Rodriguez*, 813 F.3d 748, 755 (9th Cir. 2015). A defendant charged with unlawful reentry under § 1326(a) "has a Fifth Amendment right to collaterally attack his removal order because the removal order serves as a predicate element of his conviction." *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1047 (9th Cir. 2004). A defendant may successfully challenge a predicate removal order by showing: (1) he exhausted all administrative remedies available to him to appeal his removal order; (2) the underlying removal proceedings where the order was issued improperly deprived him of the opportunity for judicial review; and (3) the entry of the removal order is fundamentally unfair. *See* 8 U.S.C. § 1326(d); *see also Ubaldo-Figueroa*, 364 F.3d at 1047 (noting that "the Due Process Clause of the Fifth Amendment requires a meaningful opportunity for judicial review of the underlying deportation" in a § 1326 prosecution).

A defendant need not fulfill the exhaustion requirement when an IJ fails to "inform him that he [is] eligible for relief from deportation." *Id.* at 1049. Additionally, an IJ's failure to inform a defendant of possible relief by definition deprives him of the opportunity for judicial review. *See, e.g.*, *id.* at 1049–50; *United States v. Ortiz-Lopez*, 385 F.3d 1202, 1204 n.2 (9th Cir. 2004). Further, the entry of a removal order is fundamentally unfair if

1 the deportation proceedings violated the defendant's due process rights and that violation
2 prejudices the defendant. *Id.* at 1204.

**IV.    DISCUSSION**

Defendant's Motion rests on his contention that his removal proceedings were fundamentally unfair. (ECF Nos. 21, 27.) Specifically, Defendant contends that the IJ failed to properly and adequately inform him of his eligibility for relief from deportation, in this case a voluntary departure. (*Id.*) Accordingly, the Court's analysis particularly turns on whether: (1) "[Defendant's] due process rights were violated by defects in the underlying deportation proceeding; and (2) "he suffered prejudice as a result of the defects." *United States v. Ramos*, 623 F.3d 672, 680 (9th Cir. 2010) (internal citations omitted). The Court finds the underlying removal proceedings were not fundamentally unfair because while Defendant suffered a due process violation, he has not established the prejudice prong to show fundamental unfairness.

**A.    Due Process Violation**

Defendant ultimately argues that his due process rights were violated because the IJ advised that the relief of voluntary departure was contingent on ability to pay without discussing considerations relevant to the relief itself.[2] (ECF No. 27 at 4.) The government's response also reflects that the IJ here informed all individuals present for the relevant group deportation proceeding, including Defendant, that if they requested a voluntary removal, they would have to pay for their own ticket (which was $351 to Mexico). (ECF No. 24 at 4; *see also* government's Exh. A, Track 3.) The Court concludes that the IJ's advisement violated Defendant's due process rights.

///

///

---

[2]Defendant's argument in the Motion, filed without the benefit of the immigration proceedings audio (ECF No. 27 at 1–2), grounded the alleged due process violation on Defendant not being advised of the relief at all. (*See generally* ECF No. 21.) In response, the government notes that the audio recording on the proceedings before the IJ (government's Exh. A) revealed that Defendant, among others were advised of the possibility of seeking voluntary departure. (ECF No. 24 at 4, 7–8.) This led to Defendant refining his contention in his reply as noted.

3

As relevant, there are two types of voluntary departure—pre and post-conclusion voluntary departure. *See, e.g.*, *In re Arguelles-Campos*, 22 I. & N. Dec. 811, 813–14 (BIA 1999); 8 U.S.C. § 1229c(a), (b)).

Pre-conclusion voluntary departure is at issue here. 8 U.S.C. § 1229c(a) provides for pre-conclusion voluntary departure. Under § 1229c(a), the Attorney General may permit an alien to voluntarily depart the country "in lieu of being subject to [removal] proceedings under section 1229a . . . or prior to the completion of such proceedings, if the alien is not deportable under section 1227(a)(2)(A)(iii)[--concerning aggravated felonies--] or section 1227(a)(4)(B)[--concerning terrorist activities--] . . .." 8 U.S.C. § 1229c(a). However, a defendant's eligibility for pre-conclusion voluntary departure is clarified in 8 C.F.R. § 1240.26(b).

Under § 1240.26, if an alien had not previously been granted voluntary departure, he may be afforded such relief under 8 C.F.R. § 1240.26(b). *See* 8 C.F.R. § 1240.26(a), (b). Section 1240.26(b) in turn provides that prior to the completion of removal proceedings an IJ may grant voluntary departure to an alien pursuant to section 240B(a) of the Act "*only if the alien*":

> (A) Makes such request prior to or at the master calendar hearing at which the case is initially calendared for a merits hearing;
> 
> (B) Makes no additional requests for relief (or if such requests have been made, such requests are withdrawn prior to any grant of voluntary departure pursuant to this section);
> 
> (C) Concedes removability;
> 
> (D) Waives appeal of all issues; and
> 
> (E) Has not been convicted of a crime described in section 101(a)(43) of the Act and is not deportable under section 237(a)(4).

8 C.F.R. § 1240.26(b)(1)(i)(A)–(E). Thus, under § 1240.26(b) it appears an IJ's discretion to grant voluntary departure is triggered by a defendant seeking that relief in the first instance. *See also In re Arguelles-Campos*, 22 I. & N. Dec. at 817 ("An alien must request section 240B(a) relief either in lieu of being subject to proceedings, or early in removal proceedings."). But notably, "there is no requirement that the [defendant] show that he has

4

the financial means to depart at the master calendar hearing, [although the defendant] will ultimately be responsible for securing and paying for transportation back to his country of origin." *United States v. Andino-Matamoros*, 365 F. Supp. 3d 1109 (D. Nev. 2019) (citing *In re Arguelles-Campos*, 22 I. & N. Dec. at 817 & 8 U.S.C. § 1229c(a)(1)).

Furthermore, an IJ has a duty to inform an alien of his ability to apply for relief from removal. *U.S. v. Vidal-Mendoza*, 705 F.3d 1012, 1017–19 (9th Cir. 2013) (explaining the IJ's duty to inform of eligibility for relief). "Merely asking whether an alien wants to apply for certain relief is not sufficient." *United States v. Rivera*, 702 F. App'x 547, 549 (9th Cir. 2017). Rather, an IJ "must adequately explain the hearing procedures to the alien, including what he must prove to establish his basis for relief." *Agyeman v. I.N.S.*, 296 F.3d 871, 877 (9th Cir. 2002). The IJ must specifically advise the alien of what relief he is eligible for, where the record contains an inference of eligibility, and give him the opportunity to develop the issue, including providing an opportunity to apply for relief and to provide evidence in support. *See United States v. Melendez–Castro*, 671 F.3d 950, 954 (9th Cir. 2012).

Here, the government argues that Defendant was informed of his right to voluntary departure, along with all other individuals in the group proceedings, and he nonetheless requested deportation and accordingly suffered no violation of his due process rights. (ECF No. 24 at 7–8.) The Court disagrees.

While Track 3 of the government's Exhibit A establishes that the IJ generally informed individuals about the relief of voluntary departure, eligibility for that relief was glaringly tethered on an individual's ability to pay for their ticket to their respective countries of citizenship in the first instance. (government's Exh. A, Track 3 at 01:04–02:26.) This understanding of eligibility for the relief became more apparent during individual canvasses conducted by the IJ. For example, after the first individual directly canvassed requested "to leave," the IJ asked whether he was requesting removal or voluntary departure. (*Id.* at 03:19–04:10.) The individual then asked how many days he would have to pay for the voluntary departure, to which the IJ responded five days. (*Id.* at 04:11–

04:20.) Based on this answer, the individual said he was requesting voluntary departure and, as the government had no objection, the IJ granted the request. (*Id.* at 04:24–04:33.) Another individual requested voluntary departure reassuring the IJ that she can get the money. (government's Exh. A, Track 5 at 03:26–04:20.) Yet another individual—immediately preceding the IJ's canvas of Defendant—requested voluntary departure and the IJ immediately asked him "Can you get the money?" (*Id.*, Track 6 at 00:21–01:49.) Another individual, who was canvassed after Defendant, requested voluntary departure to which the government objected due to that individual's criminal record. (*Id.*; Track 7 at 01:46–03:48.) Nonetheless, it appears the individual chose to forgo requesting the relief of voluntary departure solely due to potential issues with his ability to pay for his departure. (*Id.*)

Thus, although, as the government points out (ECF No. 24 at 2, 6–7), Defendant requested deportation here—as opposed to requesting voluntary departure (government's Exh. A, Track 6 at 02:45–02:53)—it is reasonable to conclude that Defendant did so because the IJ failed to properly apprise—if not misguided—him and others regarding eligibility of the latter relief *ab initio*. The IJ did not otherwise explain what factors—particularly a consideration of positive and negative equities—affected the determination of whether the relief of voluntary departure would be granted. (*See generally*, Exh. A (audio).) To be sure, it is not disputed that voluntary departure was available to Defendant under 8 U.S.C. § 1229c(a) and 8 C.F.R. § 1240.26(b)(1)(i)(A)–(E), as set forth *supra*. The Court therefore concludes Defendant suffered a violation of his due process rights where the IJ improperly explained the relief of voluntary departure by representing—at least implicitly, if not explicitly—that eligibility for that relief is contingent on ability to pay $351, which under the circumstances of Defendant's removal would presumably not be a small sum. *See also United States v. Reyes*, 3:17-cr-00056-LRH-VPC, ECF No. 26 at 8, ECF No. 29 at 3, 4 (case where government counsel in this district conceded that making a voluntary departure contingent on an individual's ability to pay amounts to a due process violation).

## B. Prejudice/Plausibility of Relief

Nonetheless, the Court concludes that based on applicable authority Defendant fails to demonstrate that it was plausible that the IJ could (or would) have exercised discretion to grant voluntary departure in his favor.[3]

An IJ has broader discretionary authority to grant pre-conclusion voluntary relief under § 1229c(a) than post-conclusion relief under § 1229c(b). *In re Arguelles-Campos*, 22 I. & N. Dec. at 817. Additionally, while it is unclear whether plausibility is defined by could or would under Ninth Circuit caselaw, it appears the distinction is largely without meaning here.

In satisfying his burden to prove plausibility of relief, a defendant "cannot succeed by merely showing a theoretical possibility of relief, but need not prove that relief was probable." *United States v. Raya-Vaca*, 771 F.3d 1195, 1207 (9th Cir. 2014) (internal citations, quotations and alteration omitted). This means that the defendant "need not show that he *definitely* would have received immigration relief[, but must] establish some evidentiary basis on which relief could have been granted." *Id.* (internal quotations and citations omitted) (emphasis added). "[T]he alien must make a plausible showing that the facts presented would cause the Attorney General to exercise discretion in his favor." *U.S. v. Barajas-Alvarado*, 655 F.3d 1077, 1089 (9th Cir. 2011). Additionally,

> [e]very case involving the prejudice prong of § 1326(d)(3) proceeds in much the same way: the defendant cites cases from the courts and the BIA where an alien with similar equities was granted the discretionary relief at issue, and the government distinguishes those cases, cites cases to the contrary, or argues that the cases relied on by the defendant are outliers. [The Ninth Circuit has ] always (1) placed the burden on the defendant to show that he was prejudiced by the due process violation, (2) evaluated the authorities cited by the defendant, (3) compared them to the authorities offered by the government, and (4) determined whether the defendant has carried his burden to prove that he suffered prejudice.

///

---

[3]In *United States v. Raya-Vaca*, the circuit court provided that plausibility required the alien to establish that he "could have" been granted relief in form of withdrawal at time of his expedited removal proceedings. 771 F.3d 1195, 1207, 1209 (9th Cir. 2014). However, in *U.S. v. Valdez-Novoa*, 780 F.3d 906 (9th Cir. 2015), the court reiterated that "the defendant must show that it was plausible that he *would have* received some form of relief from removal." *Id.* at 916 (internal quotations and citation omitted) (emphasis added).

7

*U.S. v. Valdez-Novoa*, 780 F.3d 906, 916 (9th Cir. 2015).

Here, the Court is deprived of the benefit of comparative authority by the government because beyond calling the prejudice/plausibility issue moot (ECF No. 24 at 8), the government provides no argument on the issue, much less authority in support of its position. Nonetheless, the Court observes that "the crucial point" is that Defendant "must make the initial showing that he was prejudiced [under § 1326(d)(3)] by the alleged due process violation." *Id.*[4]

In voluntary departure cases, courts in this circuit follow a two-step process to determine whether a defendant was prejudiced by an IJ's decision. *Id.* at 917. First, a court identifies "the factors relevant to the IJ's exercise of the discretion for the relief being sought." *Id.* (citations and quotation omitted). Second, the court determines whether "in light of the factors relevant to the form of relief being sought, and based on the unique circumstances of the alien's own case, it was plausible (not merely conceivable) that the IJ would have exercised discretion in the alien's favor." *Id.* (citations and quotation omitted).

An alien's "negative and positive equities" are the factors relevant to the IJ's determination of whether to grant voluntary departure. *Id.* (citations omitted). Said another way, the determination of whether relief is plausible essentially involves a balancing of positive and negative equities. The non-exhaustive list of negative equities includes: (1) "the nature and underlying circumstances of the deportation ground at issue[;]" (2) other violations of immigration laws; (3) "the existence, seriousness, and recency of any criminal record; and [(4)] other evidence of bad character or the undesirability of the applicant as a permanent resident." *Id.* (quotations and citation omitted). The positive equities include "compensating elements such as long residence . . ., close family ties in the United States, or humanitarian needs." *Id.* (quotations and citation omitted).

///

---

[4]Accordingly, unlike what defense counsel appears to posit (ECF No. 27 at 1–2 n.2), the government's failure to respond does not amount to a prevailing concession for Defendant.

Defendant contends that had the IJ considered all the negative and positive equities in Defendant's case, it is plausible the IJ would have granted him a voluntary departure. (ECF No. 21 at 7.) The Court disagrees.

Defendant particularly argues that at the time of his 2010 deportation he had no statutory bars to a discretionary grant of voluntary departure. (*Id.*) He had never been removed or deported. (*Id.*) He had never even received a voluntary departure before. (*Id.*) He had never had a single encounter with ICE and had a limited criminal history—a single conviction for possession of controlled substance for which he received probation (ECF Nos. 21-1, 21-2). (*Id.*) He came to the United States to work so that he could support his son and entire family. (*Id.*) His father was in need of surgery. (*Id.*) Defendant is a baker and hard worker. (*Id.*)

In making his plausibility of relief argument Defendant also cites multiple cases for comparison in which voluntary departure was granted despite the defendant having more extensive criminal records. (*See* ECF No. 21 at 7–8 (citing *In Re: Pineda-Castellanos, Juan Javier* ("*Pineda-Castellanos*"), A77-212-443, 2005 WL 3833024, at *1 (BIA Nov. 16, 2005); *United States v. Vasallo-Martinez*, 360 F. App'x 731, 732 (9th Cir. 2009); *In re Gonzales–Figeroa*, A29-013-696, 2006 WL 729784 (BIA Feb. 10, 2006); *United States v. Pallares-Galan*, 359 F.3d 1088 (9th Cir. 2004); *United States v. Alcazar-Bustos*, 382 F. App'x 568 (9th Cir. 2010)).)

However, all these cited cases are inapposite because they involved countervailing equities creating a connection with the United States that presumably overcame the negative equity of a criminal record. *See Pineda-Castellanos*, 2005 WL 3833024, at *1–*2 (defendant was married to a legal permanent resident, had three American citizen children and had lived in the United States for an extended period of time and the appellate panel thought the grant of voluntary departure to him was "more than generous" in light of his six criminal convictions); *Vasallo-Martinez*, 360 F. App'x at 733 (defendant came to the United States as a child and had resided in the United States for at least 21 years at the time of his deportation, all his family resided in the United States, he had been married to

a United States citizen for over 6 years and had a child who was a citizen, he had gone to school here and had worked for over 17 years, he attended the same church here for almost 20 years); *Pallares-Galan*, 359 F.3d at 1104 (defendant had two misdemeanor convictions and his "favorable equities were substantial"); *Alcazar-Bustos*, 382 F. App'x at 568 (defendant "lived in the United States since he was two months old. He is married to a U.S. citizen; they have a child who is also a citizen"). These cases simply do not provide analogous support to establish that a grant of voluntary departure was plausible in Defendant's case. Again, Defendant has no meaningfully comparable positive equities (i.e., no long residence, close family ties, and strong community ties in the United States) despite his single criminal offense. Moreover, that Defendant has a single conviction can in no way be construed as a positive equity because he had been in the United States only months at the time of that conviction. Accordingly, the Court finds that Defendant fails to demonstrate that voluntary departure relief was plausible and thus that he suffered prejudice as a result of the noted due process violation.

In sum, the Court will deny the Motion because Defendant fails to successfully collaterally attack the predicate removal for the current indictment.

**V.     CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the issues before the Court.

It is therefore ordered that Defendant's motion to dismiss (ECF No. 21) is denied.

DATED THIS 26th day of March 2020.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE